# No. 12-2496

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

ROBERT YATES, MJG-08-269; ALAN S. BERRY, MJG-08-269; DAVID
YOUNG, MJG-08-269; CARLO HORNSBY; ED FRIEDLANDER, MJG-08-269;
PAUL ENGEL, individually and on behalf of all others similarly situated, MJG-
08-269; WILLIAM D. FELIX; DAVID KREMSER, on behalf of himself and on
behalf of Elk Meadow Investments, LLC; CHARLES W. DAMMEYER, on behalf
of himself and other similarly situated

*Plaintiffs – Appellants*

and

F. RICHARD MANSON, individually and on behalf of all others similarly
situated, MJG-08-269, et al.; GEETA SHAILAM, individually and on behalf of all
others similarly situated, MJG-08-386; MICHAEL J. CIRRITO, individually and
on behalf of all others similarly situated, MJG-08-476; JOHN J. HUFNAGLE,
individually and on behalf of all others similarly situated, MJG-08-579; WILLIAM
JOHNSTON, derivatively on behalf of Municipal Mortgage & Equity, LLC, MJG-
08-670; ROBERT STAUB, derivatively on behalf of Municipal Mortgage &
Equity, LLC, MJG-08-802; THE MARY L. KIESER TRUST, by Mary L. Kieser
and Ralph F. Kieser, Trustees, derivatively and on behalf of Nominal Defendant,
Municipal Mortgage & Equity, LLC, MJG-08-805; JUDITH GREENBERG;
JOSEPH S. GELMIS, individually and on behalf of all others similarly situated,
MJG-08-2133; ARNOLD J. ROSS, MJG-08-2133; TROY BROY; JULES
ROTHAS, individually and on behalf of all others similarly situated, MJG-08-
2134; NAOMI RAPHAEL; FAFN/SLATER GROUP; KREMSER GROUP, MJG-
08-269;

*Plaintiffs*

v.

MUNICIPAL MORTGAGE & EQUITY, LLC; MELANIE M. LUNDQUIST; MICHAEL L. FALCONE; MERRILL LYNCH PIERCE FENNER AND SMITH INCORPORATED; RBC CAPITAL MARKETS, LLC.; MARK K. JOSEPH; CHARLES C. BAUM; EDDIE C. BROWN; ROBERT S. HILLMAN; DOUGLAS A. MCGREGOR; ARTHUR S. MEHLMAN; FRED N. PRATT, JR.; RICHARD O. BERNDT; WILLIAM S. HARRISON; DAVID KAY; CHARLES M. PINCKNEY

*Defendants - Appellees*

and

GARY A. MENTESANA; BARBARA B. LUCAS; EARL W. COLE, III; ANGELA B. BARONE

*Defendants*

---

On Appeal from the United States
District Court for the District of Maryland (Baltimore)

---

## BRIEF OF APPELLANTS

---

David A.P. Brower
**BROWER PIVEN**
 A Professional Corporation
475 Park Avenue South, 33rd Floor
New York, NY 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604


*Counsel for Plaintiffs-Appellants*
(additional counsel on signature page)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2496__    Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__David Young__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven _____    Date: _____4/29/2013_____

Counsel for: Appellants _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven _____    _____4/29/2013_____
(signature)    (date)

07/19/2012
SCC

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2496__    Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Robert Yates__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven                    Date:    4/29/2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on    4/29/2013    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                         4/29/2013
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. ___12-2496___    Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__David Kremser_____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                     ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven _____    Date: ____4/29/2013____

Counsel for: Appellants _____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven _____        ____4/29/2013____
         (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2496__    Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carlo Hornsby__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven            Date: 4/29/2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on ____4/29/2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                                4/29/2013
(signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. ___12-2496___    Caption: _Yates, et al. v. Municipal Mortgage & Equity, LLC, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Ed Friedlander_
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven                    Date:    4/29/2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                                4/29/2013
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2496__    Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__William D. Felix__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven                Date:    4/29/2013

Counsel for: Appellants

# CERTIFICATE OF SERVICE
*****************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                                4/29/2013
(signature)                                            (date)

07/19/2012                    - 2 -
SCC

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2496__     Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Paul Engel__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?  ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
       If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven                    Date:    4/29/2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on     4/29/2013     the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                                     4/29/2013
      (signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-2496__     Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Charles W. Dammeyer__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven _____    Date: ____4/29/2013____

Counsel for: Appellants _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____4/29/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven _____          ____4/29/2013____
(signature)                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __12-2496__     Caption: __Yates, et al. v. Municipal Mortgage & Equity, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Alan S. Barry__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
        If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Charles J. Piven                              Date:    4/29/2013

Counsel for: Appellants

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____ 4/29/2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Charles J. Piven                                                    4/29/2013
(signature)                                                              (date)

07/19/2012
SCC

- 2 -

# TABLE OF CONTENTS

**PAGE**

I.  STATEMENT OF SUBJECT MATTER AND JURISDICTION ..................1

II.  STATEMENT OF ISSUES PRESENTED ....................................1

III.  STATEMENT OF CASE ....................................................3

IV.  STATEMENT OF FACTS ...................................................7

    A.  Plaintiffs' Securities Act Claims ...................................9

        1.  The SPO ........................................................9

    B.  Plaintiffs' Exchange Act Claims ...................................10

V.  SUMMARY OF ARGUMENT ...............................................17

    A.  Plaintiffs' Securities Act Claims ..................................17

    B.  Plaintiffs' Exchange Act Claims ...................................18

VI.  ARGUMENT ...............................................................19

    A.  Standard of Review ...............................................19

    B.  The District Court Erred in Dismissing Plaintiffs' §11 Claims
        as Time-Barred by the §13 Statute of Repose....................20

    C.  The District Court Erred in Refusing to Consider Plaintiff
        Dammeyer's Purchase Confirmation Slip Which Demonstrate
        His Standing under §12(a)(2)......................................30

    D.  Plaintiffs' Alleged a §15 Claim...................................33

    E.  The District Court Erred by Disregarding Plaintiffs' Scienter
        Theory that Defendants Knew and Concealed that Application
        of FIN 46R Would be Cripplingly Expensive ....................33

    F.  The Court Relied on Inferences that Had No Rational Basis in
        the Complaint ...................................................37

i

G.    The District Court Credited Reports of Well-Positioned Witnesses as "Somewhat Supportive," but Erred by Failing to Consider All Scienter Allegations Together ........................................39

    1.    Witness-Based Allegations about  FIN 46R ............................40

    2.    Allegations of Firings and Resignations ...................................42

    3.    The District Court Improperly Minimized the Centrality of FIN 46R's Accounting Rule to MuniMae in Analyzing Scienter ...............................................................................................43

H.    MuniMae's Belated and Vague Disclosures that It Was Required to Consolidate Its Funds Did Not Meaningfully Alert Investors of the Company's Risks ...................................................53

I.    Plaintiffs Alleged a §20(a) Claim ...........................................................56

VII.    CONCLUSION ...............................................................................................56

# TABLE OF AUTHORITIES

**PAGE**

<u>CASES:</u>

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ............................................................................51

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................19

*Asher v. Baxter*,
    377 F.3d 727 (7th Cir. 2004) .....................................................................53

*Batwin v. Occam Networks, Inc.*,
    No. 07-2750, 2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1,
    2008) .........................................................................................................52

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................19

*Connor v. Harless*,
    176 N.C. App. 402, 626 S.E.2d 755 (N.C.Ct. App. 2006) ...........................22

*County of Humboldt v. Headwaters Forest Def.*,
    534 U.S. 801 (2001)....................................................................................40

*Crocker-Wheeler Co. v. Bullock*,
    134 F. 241 (C.C.D. Ohio 1904) ..................................................................22

*DeMarco v. Lehman Bros. Inc.*,
    309 F. Supp. 2d 631 (S.D.N.Y. 2004) .........................................................53

*E. I. du Pont de Nemours & Co. v. Kolon Indus.*,
    637 F.3d 435 (4th Cir. 2011) ............................................................... 19, 31

*Finkel v. Stratton Corp.*,
    962 F.2d 169 (2d Cir. 1992) .......................................................................26

*Foxboro Co., Inc. v. Soft Systems Engineering, Inc.*,
    894 F. Supp. 48 (D. Mass. 1995).................................................................21

*Freedman v. Value Health, Inc.*,
    958 F. Supp. 745 (D. Conn. 1997) ..............................................................51

*Gelfer v. Pegasyst., Inc.*,
    96 F. Supp. 2d 10 (D. Mass. 2000)..............................................................42

*Gen. Dynamics Land Sys., Inc. v. Cline*,
    540 U.S. 581 (2004)...................................................................................23

*Greenbrier Leasing Co. LLC v. Carroll*,
    No. 07-C-2884, 2008 U.S. Dist. LEXIS 46854 (N.D. Ill. June 17,
    2008) ..........................................................................................................22

*Griffin v. PaineWebber Inc.*,
    84 F. Supp. 2d 508 (S.D.N.Y. 2000) ..........................................................27

*Gross v. Medaphis Corp.*,
    977 F. Supp. 1463 (N.D. Ga. 1997) ............................................................49

*Headwaters Forest Defense v. County of Humboldt*,
    240 F.3d 1185 (9th Cir. 2001) ....................................................................39

*Healthkeepers, Inc. v. Richmond Ambulance Authority*,
    642 F.3d 466 (4th Cir. 2008) ......................................................................25

*Helwig v Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ......................................................................38

*In re Adelphia Commc'n Corp. Sec. and Deriv. Litig.*,
    No. 03-1529, 2005 U.S. Dist. LEXIS 14444 (S.D.N.Y. July 18,
    2005) ..........................................................................................................28

*In re Am. Bank Note Holographics Sec. Litig.*,
    93 F. Supp. 2d 424 (S.D.N.Y. 2000) ..........................................................49

*In re Atlas Air Worldwide Holdings*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004) ........................................................46

*In re Centocor, Inc. Sec. Litig. III*,
    No. 98-260, 1998 U.S. Dist. LEXIS 18909 (E.D. Pa. Dec. 1, 1998)..................49

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) ........................................................47

iv

*In re Constellation Energy Group, Inc.*,
  738 F. Supp. 2d 614 (D. Md. 2010)................................................44

*In re Ibis Tech. Sec. Litig.*,
  422 F. Supp 2d 294 (D. Mass. 2006)...........................................49

*In re Metro. Sec. Litig.*,
  No. 04-25, 2010 U.S. Dist. LEXIS 10613 (E.D. Wash. Feb. 8,
  2010) .............................................................................................28

*In re PETsMART, Inc. Sec. Litig.*,
  61 F. Supp. 2d 982 (D. Ariz. 1999) .............................................52

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  930 F. Supp. 68 (S.D.N.Y. 1996) ................................................55

*In re Royal Ahold*,
  351 F. Supp. 2d 334 (D. Md. 2004)..............................................46

*In re Schering-Plough Corp./Enhance Secs. Litig.*,
  2009 U.S. Dist. LEXIS 78852 (D.N.J. Aug. 31, 2009) .................32

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02-5571, 2004 U.S. Dist. LEXIS 7015 (S.D.N.Y. Apr. 22, 2004) .............49

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ..........................................32

*Johnson v. Zimmer*,
  686 F.3d 224 (4th Cir. 2012) .......................................................23

*Jolly v. Pittore*,
  No. 92-3593, 1992 U.S. Dist. LEXIS 11527  (S.D.N.Y. Aug. 5,
  1992) .............................................................................................27

*Lapin v. Goldman Sachs Group, Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006) ..........................................53

*Lehman Bros. Sec. and ERISA Litig.*,
  No. 09-MD-2017, 2012 U.S. Dist. LEXIS 148177 (S.D.N.Y Oct.
  15, 2012) ........................................................................ 26, 27, 28

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011) ................................................................ 47, 56

*Makor Issues & Rights Ltd. v. Tellabs, Inc*,
    513 F.3d 702 (7th Cir. 2008) ...............................................................44

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ............................................. 33, 40, 53

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ...............................................34

*Morse v. Peat, Marwick, Mitchell & Co.*,
    445 F. Supp. 619 (S.D.N.Y. 1977) ...............................................27

*P.Stolz Family Partnership L.P. v. Daum*,
    355 F.3d 99, 100 (2d Cir. 2004) ........................................... 26, 27

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset*
    *Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011)...............................................32

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ...............................................52

*Pub. Employees' Ret. Ass'n of Colorado v. Deloitte & Touche LLP*,
    551 F.3d 305 (4th Cir. 2009) ...............................................34

*Ratzlaf v. United States*,
    510 U.S. 135 (1994)...............................................23

*Rothman v. Gregor*,
    220 F.3d 81 (2d. Cir. 2000) ...............................................51

*SEC v. Pirate Investor*,
    580 F.3d 233 (4th Cir. 2009) ...............................................34

*Teachers' Retir. Sys. of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) ...............................................50

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................. passim

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) ...............................23

*United States v. Lehman,*
    225 F.3d 426 (4th Cir. 2000) ..........................................................................21

*United States v. Murphy,*
    35 F.3d 143 (4th Cir.1994) .............................................................................21

*United States v. Tex.,*
    507 U.S. 529 (1993)........................................................................................23

*Wag More Dogs, LLC v. Cozart,*
    680 F.3d 359 (4th Cir. 2012).........................................................................19

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .........................................................................43

## STATUTES:

15 U.S.C. §77d(3)(B) .............................................................................................24

15 U.S.C. §77m.............................................................................................. 20, 25

15 U.S.C. §78aa ......................................................................................................1

17 C.F.R. §229.303(a)(3)(ii) ................................................................................42

28 U.S.C. §1331 .....................................................................................................1

## OTHER:

1 L. Loss & J. Seligman, *Securities Regulation* 514 n.285 (3d ed. 1998)...............24

17 Am. Jur. 2d, Contracts §82. ...........................................................................22

Black's Law Dictionary (9th ed. 2009). ..............................................................21

Merriam-Webster Dictionary (Online ed. 2013). ...............................................21

Thomas Lee Hazen, *Federal Securities Law* at 50 (2d ed. Federal Judicial
    Center 2003) ................................................................................................24

# I.   STATEMENT OF SUBJECT MATTER AND JURISDICTION

Plaintiffs appeal from a judgment dismissing certain claims in a securities fraud class action alleging violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77k, 77l, 77o; and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, 15 U.S.C. §§78(j)(b), 78t(q), 17 C.F.R. §240.10b-5. The district court had federal question jurisdiction.  28 U.S.C. §1331; 15 U.S.C. §78aa.

This Court has jurisdiction under 28 U.S.C. §1291 to review a judgment of dismissal entered on November 14, 2012.  Plaintiffs timely filed a notice of appeal. (Joint Appendix ("J.A.") 1749).

# II.   STATEMENT OF ISSUES PRESENTED

A.   Whether the district court erred in dismissing plaintiff Charles W. Dammeyer's claims under §11 of the Securities Act as time-barred by the statute of repose of §13 of the Securities Act by concluding that "bona fide offered to the public" as used in §13 means the date a registration statement is declared effective by the S.E.C. regardless of whether the subject securities are actually offered to the public on that date.

B.   Whether the district court erred in holding plaintiff Dammeyer lacked standing under §12(a)(2) of the Securities Act by refusing to consider his purchase confirmation slip, which was incorporated into the complaint by reference, and

demonstrated he was a direct purchaser in Municipal Mortgage & Equity, LLC's ("MuniMae") secondary public offering from an underwriter defendant.

C.    Whether the district court erred in dismissing plaintiff Dammeyer's claims under §15 of the Securities Act by erroneously dismissing his underlying §§11 and 12(a)(2) claims.

D.    Whether the district court erred in misconstruing plaintiffs Robert Yates, Alan S. Barry, David Young, Carlo Hornsby, Ed Friedlander, William D. Felix, David A. Kremser, Dammeyer and Paul B. Engel's theory of scienter under §10(b) of the Exchange Act, by focusing on whether defendants knew how to apply the subject accounting rule, FIN 46R, when the complaint focuses on defendants' knowing or reckless failure to apply the rule and their concealment of the adverse financial consequences of compliance.

E.    Whether the district court erred in finding as to the complaint's pleading of scienter under §10(b) of the Exchange Act that defendants' competing, nonculpable inference was more compelling than the inference of scienter by overlooking or failing to properly weigh key facts, and relying on inferences not rationally drawn from the facts alleged in the complaint.

F.    Whether the district court erred in dismissing the complaint's claims under §20(a) of the Exchange Act by erroneously dismissing the underlying §10(b) claim.

## III.    STATEMENT OF CASE

This action consists of five class actions and five derivative actions filed in the District of Maryland and Southern District of New York.  On August 13, 2008, the United States Judicial Panel on Multidistrict Litigation transferred all cases pending in the Southern District of New York to the District of Maryland for coordinated proceedings before the Honorable Judge Marvin J. Garbis (the "District Court").  On August 27, 2008, the District Court consolidated the actions.

On December 5, 2008, plaintiffs filed their Consolidated and Amended Class Action Complaint (the "Complaint") on behalf of investors who purchased MuniMae's stock between May 3, 2004 and January 29, 2008 (the "Class Period"). The Complaint alleges the following claims by the following plaintiffs against the following defendants: Count One alleges violations of §10(b) of the Exchange Act against MuniMae and Individual Defendants[1] on behalf of plaintiffs Yates, Barry, Young, Hornsby, Friedlander, Felix, Kremser, Dammeyer and Engel (the "Exchange Act Plaintiffs"); Count Two alleges violations of §20(a) of the Exchange Act against Individual Defendants on behalf of the Exchange Act Plaintiffs; Count Three alleges

---

[1]    Chief Executive Officer ("CEO") Michael L. Falcone, Chairman and former CEO Mark K. Joseph, former Executive Vice President and Chief Financial Officer ("CFO") William S. Harrison, former CFO Melanie M. Lundquist, former Chief Operating Officer ("COO") and interim-CFO Charles M. Pinckney, and CFO David Kay (the "Individual Defendants" and MuniMae are collectively   the "Muni Defendants").

- 3 -

violations of §11 of the Securities Act against MuniMae, Individual Defendants and

Director Defendants[2] in connection with MuniMae's Dividend Reinvestment Plan

("DRP") on behalf of plaintiffs Felix and Engel (the "DRP Plaintiffs"); Count Four

alleges violations of §12(a)(2) of the Securities Act against MuniMae in connection

with MuniMae's DRP on behalf of the DRP Plaintiffs; Count Five alleges violations

of §15 of the Securities Act in connection with MuniMae's DRP against Individual

Defendants and Director Defendants on behalf of the DRP Plaintiffs; Count Six

alleges violations of §11 of the Securities Act against MuniMae, Individual

Defendants and Director Defendants in connection with MuniMae's secondary public

offering of stock during the Class Period (the "SPO") on behalf of Dammeyer; Count

Seven alleges violations of the Securities Act §12(a)(2) in connection with the SPO

against MuniMae and Underwriter Defendants[3] on behalf of plaintiff Dammeyer; and

Count Eight alleges violations of §15 of the Securities Act in connection with the SPO

against Individual Defendants and Director Defendants on behalf of plaintiff

Dammeyer.

Defendants filed motions to dismiss on March 12, 2009. On June 26, 2012, the

District Court issued a memorandum opinion and order (the "Order"). Although the

---

[2]     Charles C Baum, Richard O. Berndt, Robert S. Hillman, Douglas A. McGregor,
Eddie C. Brown, Fred N. Pratt, Jr., and Arthur S. Mehlman.

[3]     Merrill Lynch, Pierce, Fenner & Smith, Inc. and RBC Capital Markets Corp.

District Court acknowledged that defendants "do not contend that Plaintiffs have failed to allege that there were some" material misrepresentations or omissions (J.A. 1655), and  that the Exchange Act Plaintiffs adequately pled loss causation (*id.* at 1690), the District Court granted the Muni Defendants' motion to dismiss Count One of the Complaint for violations of §10(b) of the Exchange Act and Rule 10b-5, finding that the Exchange Act Plaintiffs failed to plead facts giving rise to a strong inference of scienter.  (*Id.* at 1682-83)  Despite finding that "[t]here is no doubt that these allegations are somewhat supportive of an inference that MuniMae and some of the Individual Defendants acted with fraudulent intent" (*id.* at 1673), the District Court found that the competing innocent inferences offered by Defendants were more compelling.  (*Id.* at 1682).  The District Court dismissed Count Two, holding that because the Exchange Act Plaintiffs failed to adequately plead a viable §10(b) violation, they failed to plead a predicate offense for  control person liability under §20(a) of the Exchange Act.  (*Id.*)

With respect to the Securities Act claims, despite finding actionable material misrepresentations and omissions, holding that plaintiff Dammeyer's §11 claims  in connection with the SPO were pled with particularity (*id.* at 1701-04), were not barred by the Securities Act's one-year statute of limitations (*id.* at 1704-08), and should not be dismissed for lack of standing, the District Court dismissed Count Six, holding that the §11 claims relating to the SPO were time-barred under the three-year statute of

repose of §13 of the Securities Act. (*Id*. at 1714)  The District Court dismissed Count Seven, holding that because the Complaint did not adequately plead that plaintiff Dammeyer purchased his shares directly in the SPO, he lacked standing under §12(a)(2) of the Securities Act. (*Id*. at 1724).  The District Court dismissed all claims against Underwriter Defendants relating to the SPO in Count Seven finding that plaintiff Dammeyer failed to adequately allege he purchased, or received solicitation, directly from Underwriter Defendants. (*Id*. at 1727)  In turn, the District Court dismissed Count Eight under §15 of the Securities Act in connection with the SPO because plaintiff Dammeyer  failed to allege sustainable claims under §§11 and 12(a)(2) of the Securities Act.

Finally, the Court denied the Muni Defendants and Director Defendants' motions to dismiss the DRP Plaintiffs' claims under §§11, 12(a)(2) and 15 of the Securities Act in connection with purchases of MuniMae stock pursuant to MuniMae's DRP, holding that those claims were timely and adequately pled.

Following issuance of the Order, the parties agreed and jointly requested the District Court issue a Fed. R. Civ. P. 54(b) judgment to permit immediate appeal of the District Court's dismissals of the claims under §§10(b) and 20(a) of the Exchange Act and §§11, 12(a)(2) and 15 of the Securities Act relating to the SPO (the "Judgment").  On November 14, 2012, the District Court issued a Rule 54(b) Determination and a separate Judgment Pursuant to Rule 54(b), ruling that a "final

judgment can be entered resolving the claims presented in Counts One, Two, Six, Seven, and Eight of the [ ] Complaint" and that "[t]here is no just reason for delay in the entry of such a judgment."  The District Court also retained jurisdiction over the claims under §§11, 12(a)(2) and 15 of the Securities Act in connection with the DRP, but stayed proceeding with those claims pending the outcome of the appeal of the dismissal of the other claims in the Complaint.[4]

On November 30, 2012, Plaintiffs timely appealed from the Order and Judgment, and subsequently filed an Amended Notice of Appeal on December 4, 2012.

## IV.    STATEMENT OF FACTS

The low-income housing tax credit program, created by the Tax Reform Act of 1986, provided tax credits ("LIHTCs") to developers when they constructed low-income rental housing.  (J.A. 56, ¶17)  Developers often sold these tax credits to syndicators.  (J.A. 56-57, ¶19)  MuniMae, a financial services company, was one of the country's largest syndicators of LIHTCs.  (J.A. 50, 56, ¶¶5, 17) It formed investment funds ("Funds") and assembled groups of investors to invest in the funds.  (J.A. 56-57, ¶19)  MuniMae acted as a general partner of the Funds, and received syndication and asset management fees for its services.  (J.A. 57, ¶20)

---

[4]    Counts Three, Four and Five were found to be separable and relatively *de minimis*.  (J.A. 1740, 1748).

MuniMae's syndication of Funds generated high-yield, tax-exempt dividends. (J.A. 57, ¶22) Defendants recognized that investors purchased MuniMae stock primarily for these dividends and touted MuniMae's "long track record of steadily growing dividends," claiming it was a "highly attractive investment" for investors. (J.A. 57-59, ¶¶22-25)

In 2003, in the wake of the Enron scandal, the Financial Accounting Standard Board changed the reporting rules for consolidated financial statements. (J.A. 59-60, ¶27) To ensure that financial risks from "off-balance sheet" entities were identified, it adopted GAAP Financial Interpretation No. ("FIN") 46, and in December 2003, adopted a revision, FIN 46R. In contrast to the previous rule, which required an enterprise's financial statements to consolidate financial data of subsidiaries only where the enterprise had a majority voting interest, FIN 46 and 46R required a company to consolidate investment vehicles known as variable interest entities ("VIEs") onto its financial statement if it was the "primary beneficiary" of the risks and rewards in the assets of the VIE. (J.A. 60-61, ¶¶28-30)

### A.    Plaintiffs' Securities Act Claims

#### 1.    The SPO

On February 2, 2005, through the auspices of a firm commitment underwriting agreement with the Underwriter Defendants, the Securities Act Defendants[5] commenced the SPO of 2,575,000 shares of MuniMae common stock, which netted approximately $65 million in proceeds.  (J.A. 111, ¶152)  The SPO Registration Statement was filed on January 3, 2005.  Thereafter, an amendment was filed, and the SPO Registration Statement was initially declared effective on January 14, 2005.  On February 1, 2005, the Securities Act Defendants filed a prospectus supplement that stated that the SPO Prospectus would be effective the following day, February 2, 2005, with a closing date of February 8, 2005.  Plaintiff Dammeyer alleged that he purchased shares of MuniMae common stock pursuant and/or traceable to MuniMae's February 2, 2005 SPO Prospectus.  (J.A. 89, ¶103)  His transaction confirmation indicates a price of $26.32 per share on February 3, 2005, which was in the range of share prices stated in the SPO Prospectus.  (J.A. 1604-06)  As the Complaint alleges, his purchase confirmation for those shares indicated Dammeyer received his shares on February 8, 2005, the date the SPO closed, the date MuniMae stated that the shares would first be available for distribution.  Additionally, the confirmation indicated

---

[5] The Underwriter Defendants, the Individual Defendants, the Director Defendants, and MuniMae are collectively referred to herein as the "Securities Act Defendants."

"PROS UNDER SEP COVER," meaning prospectus under separate cover, which is a traditional indicator on a purchase confirmation of shares purchased in a public offering. (J.A. 89, ¶103).

In the SPO Prospectus, MuniMae claimed to be in compliance with FIN 46R. (J.A. 112, ¶153)  In fact, MuniMae had failed to consolidate over 230 VIEs for which it was the primary beneficiary.  (J.A. 112-13, ¶¶153-54)  Also undisclosed in the Prospectus, was that MuniMae lacked sufficient processes and procedures to consolidate those VIEs, and that the massive effort needed to restate the Company's financials to comply with Generally Accepted Accounting Principles ("GAAP") and SEC rules would entail exorbitant costs, devastate the Company's cash available for distribution ("CAD"), and jeopardize its high yield, tax-exempt dividends.  (J.A. 112-13, ¶¶153, 155)  Because MuniMae had not properly consolidated certain entities, it was continuing to recognize syndication fees and asset management fees from VIEs that should have been eliminated in consolidation – a violation of GAAP.  (J.A. 113, ¶155)  The SPO Prospectus also failed to disclose that MuniMae lacked effective internal controls which would have ensured MuniMae's compliance with GAAP and SEC rules. (*Id.*)

### B.    Plaintiffs' Exchange Act Claims

On May 3, 2004, the first reporting period in which FIN 46R was in effect, MuniMae filed a Form 8-K with the SEC, announcing that is was in compliance with

FIN 46R and it had consolidated equity investments in funds for which it determined it was the primary beneficiary. (J.A. 62-63, 94, ¶¶33, 127) Defendants also claimed that MuniMae's interests in other Funds did not need to be consolidated. (J.A. 63, ¶34)

MuniMae thereafter represented it was in compliance with FIN 46R for 10 financial quarters (J.A. 101-51, ¶¶138, 143, 148, 156, 159, 162, 167, 170, 174-77, 183-84, 186, 189, 190, 217), until January 2007, when it finally – if obliquely – admitted it had erroneously failed to consolidate substantially all of its Funds. (1/30/07 press release) It took another year before defendants meaningfully disclosed that FIN 46R required it to consolidate approximately 200 VIEs involving analysis of thousands of financial statements over 10 reporting periods at an enormous cost – $54.1 million in 2007 alone (J.A. 179-80, ¶247(u)) – resulting in MuniMae's first cut in quarterly dividends in more than a decade. This acknowledgement caused MuniMae's stock to plummet. (J.A. 170-72, ¶¶237-41)

Compliance with FIN 46R required MuniMae to review financial statements of more than 2,000 partnerships and 6,000 separate financial statements over 10 financial periods. This massive task was made more difficult because MuniMae had inadequate and ill-prepared staff and lacked the necessary systems and automated processes. (J.A. 67-69, ¶¶45-53)

As early as June 2004, concerns about FIN 46R compliance were aired in MuniMae's weekly Internal Audit Department meetings. (J.A. 80-81, ¶80) Confidential Witness 1 ("CW1"), the Administrative Assistant to MuniMae's head of Internal Audit, Angela Barone, from June 2004 through June 2007, attended these meetings. (*Id*.) According to CW1, Barone regularly expressed frustration with the compliance process to defendant Falcone, the CEO, and to defendant Lundquist, when she was CFO. (*Id*.)

CW2, an in-house certified public accountant for MuniMae from late 2005 through April 2007, reported directly to Lundquist and to Chief Accounting Officer Greg Thor, whose primary role was to determine which Funds required consolidation to comply with FIN 46R. (J.A. 81-82, ¶82) According to CW2, in late 2005-early 2006, CW2, Lundquist and Thor all realized that MuniMae needed to restate its financials to consolidate Funds, and by March 2006, when MuniMae issued its first restatement, as the District Court found, they had "concluded that the LIHTC Funds needed to be consolidated." (J.A. 1673)

According to CW2, defendants Lundquist and Falcone met weekly and sometimes daily to discuss the first restatement process, when Lundquist repeatedly raised concerns about FIN 46R. (J.A. 82-83, ¶84) At bi-weekly meetings, Lundquist, Falcone, Thor and CW2 discussed how many Funds needed to be consolidated and the

- 12 -

financial impact of consolidation. (*Id.*) CW2 states that CAD was a "big focus of the company" and was "all Falcone cared about." (*Id.*)

On March 10, 2006, MuniMae announced its first restatement of financials for 2002-2005, due to accounting errors unrelated to FIN 46R. (J.A. 134-35, ¶194) Despite defendants' awareness of MuniMae's lack of compliance with FIN 46R, the announcement made no mention of the rule or the need to consolidate more than 200 VIEs. Nor did it disclose that MuniMae had inadequate systems to accomplish this hugely complex task, and, thus, had to build a process from scratch at great cost. (J.A. 67-69, ¶¶45-53) On the contrary, the press release assured investors that the restatement "does not impact cash available for distribution (CAD) in any period." (J.A. 134-35, ¶194)

CW3, hired as a staff accountant in 2000, was eventually promoted to project manager for SOX compliance. (J.A. 83, ¶86) CW3 regularly attended meetings concerning MuniMae's accounting policies with defendants Falcone, Joseph, Harrison, and Lundquist. (*Id.*) Prior to the first restatement, CW3 participated in discussions with defendants about whether to restate, and confirms that defendants were well aware of the massive problems surrounding lack of FIN 46R compliance. (J.A. 84, ¶88) According to CW3, some of the factors ultimately addressed in the restatement were not sufficiently significant to require restatement. The need to restate was attributable to the "debate around FIN 46's documentation process," which

- 13 -

had "come to a head" between PricewaterhouseCoopers ("PwC") – MuniMae's outside auditor – and MuniMae's senior executives, including defendants Falcone and Harrison, and Angela Barone. (*Id.*) This debate centered on whether various Funds needed to be consolidated. In monthly meetings attended by Falcone, Harrison and later Lunduist, the PwC partner "insisted" that these entities be consolidated. (*Id.*)

In the fall of 2006, according to CW1, Falcone sent a memo to all employees explaining that MuniMae was restating its financial reports, that this was a priority, that the auditing staff would be focusing all of their efforts on the restatement, and that overtime would be mandatory. (J.A. 81, ¶81)

On September 13, 2006, the Muni Defendants announced issuance of a second restatement covering fiscal years 2003-2005. (J.A. 153-54, ¶220) Again, there was no mention of FIN 46R compliance issues and the Muni Defendants continued to assure investors that the restatement would not impact CAD or the dividend. (J.A. 154-55, ¶221)

On October 26, 2006, MuniMae announced it had fired PwC, claiming that "there were no disagreements with PwC on any matter of accounting principles or practices, financial statement disclosure or audit scope or procedure." (J.A. 155-57, ¶223) The denial of any disagreement with PwC was false; as CW3 reported, there was a great deal of animosity and frustration" with PwC regarding FIN 46R compliance. (J.A. 83-84, ¶¶86-88)

- 14 -

On January 31, 2007, MuniMae issued a press release, entitled, "MuniMae Announces 40th Consecutive Increase in Quarterly Distribution," emphasizing its increased dividend. (1/31/07 Press Release)  Towards the end of the statement in a section captioned "Other Matters," MuniMae, for the first time, mentioned that "the Company has concluded, among other things, that it will be required to consolidate substantially all of the low income housing tax credit equity funds it has interests in." (*Id.*)  There were no further details about the consolidation process, with nothing to even suggest to investors that increasing quarterly dividends were in jeopardy because MuniMae did not have adequate systems in place for this massive task and that the costs involved would be substantial.  (J.A. 59-60, 67, ¶¶27, 45)

In August 2007, MuniMae held a teleconference in which the Muni Defendants claimed they were "devoting as many resources as possible" to completing their restatement efforts and "certainly expect to finish our efforts within the first two months of 2008." (J.A. 164-65, ¶231)  The Muni Defendants noted that there were "approximately 92 people currently working on the restatement," including 20 employees and 72 consultants. (*Id.*)  MuniMae, however, was "pleased to announce" another increase in its quarterly dividend and reassured investors that "management plans to ask the Board to maintain the current dividend policy."  (J.A. 165, ¶232)

On November 2, 2007, in announcing its 43rd consecutive dividend increase, defendants noted that "due to the costs incurred" in connection with the restatement,

"it is possible that the dividend payout ratio for the 2007 fiscal year may exceed 100% of the Company's net cash generated from operations for the fiscal year 2007." (J.A. 165-66, ¶233)

Less than a week later, on November 8, the Muni Defendants stated that management planned to recommend to its board that MuniMae maintain its policy of increasing dividends each quarter despite the possibility that "the dividend payout ratio for the full fiscal year 2007 may exceed 100% of [MuniMae's] net cash." (J.A. 166-67, ¶234) MuniMae acknowledged it had over 100 full-time employees working on the restatement and that the "magnitude and the cost will be very significant," but still touted another increase in quarterly dividends. (J.A. 167-69, ¶235)

On January 28, 2008, MuniMae issued a press release announcing it was cutting its quarterly dividend by 37% in part "due to the costs of [MuniMae's] ongoing restatement" (J.A. 170, ¶237) and that it would be delisted from the New York Stock Exchange because of its inability to complete its restatement by the NYSE-imposed March 3, 2008 deadline. (J.A. 170, ¶238) On this news, MuniMae's share price dropped approximately 47% on unusually heavy trading. (J.A. 66, 171, ¶¶43, 239)

The next day, MuniMae filed a Form 8-K and conducted a conference call which disclosed long-concealed details, including that: (i) the reduction in the dividend distribution was due to the ongoing restatement costs; (ii) the restatement involved analyzing over 200 VIEs, which would require analysis of more than 2,000

partnerships and 6,000 separate financial statements; (iii) MuniMae had no process to do this and had to "basically build a process and implement it," a process that required "highly manual intensive rework"; and (iv) the restatement required analyzing 10 financial periods over three years.  (J.A. 171-72, 179, ¶¶240, 247(t)) In response to these disclosures, its stock price plummeted.  (J.A. 172, ¶241) MuniMae had not completed the restatement by the time of the filing of the Complaint in November 2008, more than four years after FIN 46R went into effect (J.A. 61, ¶29) and more than two years after the September 2006 announcement of the restatement.  (J.A. 51-52, ¶9)

## V.    SUMMARY OF ARGUMENT

### A.    Plaintiffs' Securities Act Claims

The initial complaint alleging Securities Act claims was filed on February 1, 2008, less than three years from the date the MuniMae shares in the SPO were actually offered for sale to the public.  The District Court, however, erroneously concluded that the statute of repose period commenced on January 14, 2005, the date the registration statement was first declared effective by the SEC, rather than February 3, 2005 when the shares were actually initially offered for sale to the public.  The three-year repose prong of the Securities Act's statute of limitations begins to run after the subject securities are actually offered to the public, not when they legally can be offered.  Here, the shares sold pursuant to the SPO were not priced until February 2,

2005, let alone, at the earliest, bona fide offered to the public. Thus, the District Court committed reversible error by holding that the Complaint was not "brought more than three years after the securit[ies] [in the SPO] were bona fide offered to the public" for sale.

Further, the District Court, in finding that plaintiff Dammeyer did not adequately plead that he purchased his shares directly in the SPO pursuant to §12(a)(2) of the Securities Act, disregarded Supreme Court precedent by refusing to consider the Complaint in its entirety, including facts contained in documents incorporated into the Complaint by reference. Plaintiff Dammeyer's purchase confirmation slip, which is expressly incorporated into the Complaint by reference, adequately demonstrate that he purchased his MuniMae shares in the SPO directly from one of Underwriter Defendants. Thus, he has standing under §12(a)(2) of the Securities Act.

**B.    Plaintiffs' Exchange Act Claims**

Exchange Act Plaintiffs allege a strong inference of scienter. The District Court erroneously focused on the Muni Defendants' extraneous factual argument about the purported difficulties in determining how to apply what the court considered to be a complex accounting rule when the Complaint did not allege that the accounting rule itself was complex to apply, but rather that defendants had concealed the scale and cost in implementing the rule they knew applied. The District Court also erroneously

- 18 -

eschewed the requisite holistic review by concluding that the witness reports were "somewhat supportive" of a fraudulent inference, but then evaluating the remainder of Plaintiffs' allegations in isolation, disregarding their collective strength. The District Court further erred by treating Muni Defendants' belated, inadequate disclosures as meaningful warnings sufficient to negate the inference of scienter. Ultimately, the District Court erroneously accepted the Muni Defendants' factually unsupported, nonculpable excuses for their misstatements based on facts and inferences not rationally drawn from the Complaint, but based on the District Court's own factual hypothesis which it then found more compelling than the facts actually alleged in the Complaint.

## VI.    ARGUMENT

### A.    Standard of Review

This Court reviews de novo the district court's grant of a Rule 12(b)(6) motion to dismiss. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Wag More Dogs*, 680 F.3d at 365. Further, a court must "draw all reasonable inferences in favor of the plaintiff.'" *E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).

**B.    The District Court Erred in Dismissing Plaintiffs' §11 Claims as Time-Barred by the §13 Statute of Repose**

Despite finding that plaintiff Dammeyer adequately alleges actionable misrepresentations and omissions under the standards applicable to the Securities Act (J.A. 1701-08), and has standing to assert those claims, the District Court dismissed these claims by erroneously finding that the initial complaint was filed after expiration of the three-year period under the Securities Act's statute of repose.  (J.A. 1714)

Section 13 of the Securities Act provides a statute of repose requiring a plaintiff to bring any Securities Act claims no more "than three years after the security was bona fide offered to the public."  15 U.S.C. §77m.  The District Court adopted an unsupportable bright-line rule that "the repose period commenced on January 14, 2005, the date the registration statement was declared effective by the S.E.C." (*Id.*) This conclusion is neither supported by the plain language of the statute nor logic. The securities at issue here were not offered to the public for sale and, thus, not "bona fide offered to the public" until February 2, 2005.  In fact, the public did not learn that the registration statement was declared effective until February 1, 2005, when defendants filed a supplement and prospectus, which were ***back-dated*** to January 14, 2005.

The plain meaning of the statutory language supports Plaintiffs' position. Moreover, "[i]f the statutory language is not ambiguous, then we do not engage in interpretation of the statute, but merely in its application."  "Generally, in examining

- 20 -

statutory language, words are given their common usage." *United States v. Murphy,* 35 F.3d 143, 145 (4th Cir.1994). Here, where the phrase "bona fide offered to the public" is not defined in the relevant statutory provisions, it is typically "interpreted as taking their ordinary, contemporary, common meaning." *United States v. Lehman,* 225 F.3d 426, 428 (4th Cir. 2000). The dictionary defines the term "bona fide" as "genuine" and the term "public" as "a place open or visible to the public." Black's Law Dictionary (9th ed. 2009). The term "offer" is defined by the §2(a)(3) of the Securities Act as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." *Id.* Furthermore, the dictionary defines "offer" as "to present for acceptance or rejection," "to make available," or "to place on sale." Merriam-Webster Dictionary (Online ed. 2013). Thus, under the plain language of §13, the statute of repose does not begin to run, at the earliest, until the security has been "bona fide" or genuinely placed on sale "for value" in a manner capable of acceptance, ***and*** in a manner that is open or visible—*i.e.*, "offered to the public." The securities here were ***not*** genuinely made available or placed on sale (*i.e.,* "offered") to the public on January 14, 2005, as the securities were not even ***priced*** until after the market closed on February 2, 2005. (J.A. 1557) Applying the plain language of the statute to those facts shows the securities were not and could not be "bona fide offered to the public" until, at the earliest, they were priced on February 2,

2005. *Foxboro Co., Inc. v. Soft Sys. Eng'g, Inc.,* 894 F. Supp. 48, 51 (D. Mass. 1995) (explaining that a bona fide offer refers to an offer made with an intent to bind).

Indeed, before there was an offering price for the MuniMae securities, there could be no genuine (*i.e.*, "bona fide") offer to the public to buy any shares in the SPO, because there could be no acceptance of such an offer without inclusion of a price. "An agreement which does not specify the price or any method for determining it, but which leaves the price for future determination and agreement of the parties, is not binding." 17 Am. Jur. 2d, Contracts §82. Price is an essential term of an offer to sell a good and without a price, an offer to sell is incapable of legal acceptance and, therefore, not a bona fide offer to sell. *See, e.g., Crocker-Wheeler Co. v. Bullock*, 134 F. 241, 249-50, (C.C.D. Ohio 1904) ("Until the agreed person names the price, no obligation attaches to either seller or buyer…"); *Greenbrier Leasing Co. LLC v. Carroll*, No. 07-C-2884, 2008 U.S. Dist. LEXIS 46854, at *12 (N.D. Ill. June 17, 2008) ("As written, however, the April 5 letter's ambiguity about when and how the price would be determined with reference to Iron Age means it could not have been an offer capable of acceptance."); *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) ("Essential terms of a contract include the parties, the subject matter of the agreement, and the price to be paid under it.").

It must be presumed that Congress in 1933 understood the fundamental concept that a legitimate offer to sell a commodity under the common law required the offer be

capable of acceptance and that without a price for the commodity, no genuine offer to sell could have occurred when it chose the formulation "bona fide offered."" *See, e.g., United States v. Tex.*, 507 U.S. 529, 540 (1993) ("We presume that Congress understands the legal terrain in which it operates...."). Therefore, here, there could not have been a bona fide offer on January 14, 2005, be it to the public or otherwise, because the offer was incapable of acceptance by any member of the public until, at the earliest, when the securities were priced on February 2, 2005.

This definition of "bona fide offered to the public" is additionally confirmed by considering the context of the statutory scheme. *Johnson*, 686 F.3d at 233 (quoting *Gen. Dynamics Land Sys., Inc. v. Cline,* 540 U.S. 581, 596 (2004) ("[I]t is a 'cardinal rule' of statutory interpretation that 'statutory language must be read in context [because] a phrase gathers meaning from the words around it.'"); *see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630, 98 L. Ed. 2d 740 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear."). Importantly, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994).

Here, the Securities Act expressly provides that the date on which a security is "bona fide offered to the public" can be entirely distinct from the date on which a registration is declared effective. Section 4(3)(B) of the Securities Act, 15 U.S.C. §77d(3)(B), states that "transactions in a security as to which a registration statement has been filed taking place prior to the expiration of *forty days **after the effective date of such registration statement <u>or</u>** prior to the expiration of *forty days **after the first date upon which the security was bona fide offered to the public*** by the issuer or by or through an underwriter after such effective date, **whichever is later**[.]").[6] Therefore, "[s]ection 4(3) provides an exemption from the prospectus delivery requirements for certain transactions by dealers. . . . If a registration statement has been filed, §4(3)(B) provides that the exemption applies during the first forty days after (1) the securities were offered to the public or (2) the effective date [of the registration statement], whichever is later." Thomas Lee Hazen, *Federal Securities Law* at 50 (2d ed. Federal Judicial Center 2003).

Despite recognizing this distinction, Congress chose the date the security was "bona fide offered to the public" and **not** "the effective date of the registration

---

[6] The leading treatise on the securities laws explains the term "bona fide" in §13 was copied from §4(1) of the original Securities Act, which is now in §4(3). *See Amicus Curiae* Brief of the SEC (citing 1 L. Loss & J. Seligman, *Securities Regulation* 514 n.285 (3d ed. 1998). Therefore, as discussed herein, the meaning of the term in §4(3) can shed light on the meaning of the term as used in §13. *Id*. at n.6.

statement" as the commencement date for purposes of the § 13 statute of repose. 15 U.S.C. §77m; *see also Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2008) ("It is generally assumed that where 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"). Had Congress intended the repose period to commence on the effective date of the registration statement it presumably would have stated it, as Congress certainly contemplated the possibility that the two events could involve different dates. *See, e.g., Healthkeepers, Inc.*, 642 F.3d at 472. Congress did not legislate that plaintiffs may not bring a Securities Act claim more than "three years after the registration statement was declared effective," but rather when the shares were "bona fide offered to the public" for sale.

Furthermore, if, as the District Court erroneously concluded, the date the security is "bona fide offered to the public" were interpreted to be the same date the initial registration statement is declared effective, it would create an obvious inconsistency between §4(3) and §13 of the Securities Act, because the two dates could be different in §4(3), but would always be the same in §13. *See Healthkeepers,* 642 F.3d at 472 (A statutory interpretation must, "to the extent possible, ensure that the statutory scheme is coherent and consistent."). Thus, statutory construction and

common sense both provide that a "bona fide offer" may occur on a different date than the date the registration becomes effective.

The District Court erroneously relied on the Second Circuit's decision in *P.Stolz Family Partnership L.P. v. Daum*, 355 F.3d 99, 100 (2d Cir. 2004), for the proposition that "'the repose period is triggered by the effective date of the (allegedly false) registration statement for the offer – *i.e.*, the beginning of the offer.'" (J.A. 1711) But, no fact question was presented in that case about the bona fide offering date. More importantly, that case made clear that "the registration is merely the manifestation of the underlying test: the genuineness of the offer to the public. The relevant question for Section 13 is when was the stock really and truly (genuinely) being offered to the public. . . . ." *Id.*

As a practical matter, "ordinarily, a security is 'bona fide offered to the public' at the effective date of the registration statement," *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992), because those events typically occur virtually simultaneously. But, as one court recently observed, this is just the "starting point" for the analysis. *Lehman Bros. Sec. and ERISA Litig.*, No. 09-MD-2017, 2012 U.S. Dist. LEXIS 148177, at *25-*26 (S.D.N.Y Oct. 15, 2012). The phrase "bona fide offered to the public" "recognizes that there will be circumstances in which stock covered by an effective registration statement has not genuinely been offered to the public, in which case the commencement of the repose period may begin later than the effective date of

- 26 -

the registration statement." *Id.* (citing *P.Stolz Family,* 355 F.3d 99); *see also Fed. Housing Fin. Agency v. UBS Americas, Inc*., No. 11-Civ.-5201, 2012 U.S. Dist. LEXIS 88471, at *6-*7 (S.D.N.Y. June 26, 2012) (rejecting defendants' argument that "the effective date of the[] registration statements, not the dates certificates were actually marketed for sale, establish[ed] the beginning of Section 13's three-year repose period").[7]

While here, the registration statement was declared effective on January 14, 2005, as the District Court acknowledged (J.A. 1714), that date was not the date the shares were "really and truly (genuinely) [ ] offered to the public for sale and, thus, not the date the stock was "bona fide offered to the public." *See P. Stolz Family,* 355 F. 2d at 104; *see also Lehman Bros.,* 2012 U.S. Dist. LEXIS 148177, at *25-*26 ("The pivotal question is whether the plaintiffs have alleged facts from which it

---

[7]    The District Court relied on several district court cases that are easily distinguishable as in those cases there was no appreciable delay between the effective date of the registration statement and the actual sale of the shares to the public. *See Griffin v. PaineWebber Inc*., 84 F. Supp. 2d 508, 512 (S.D.N.Y. 2000) (two-day delay between the effective date of the registration statement and the date when the securities were priced and offered to the public); *Jolly v. Pittore*, No. 92-3593, 1992 U.S. Dist. LEXIS 11527, at *3-*4  (S.D.N.Y. Aug. 5, 1992) (no delay between the effective date of the registration statement and the actual sale of securities to the public, and noting  that "*[g]enerally,* a security is 'bona fide offered to the public' on the effective date of the security's registration."); *Morse*, 445 F. Supp. at 622 (involving solicitation of sales of the securities several months before the effective date of the registration, finding the §11 claims timely and rejecting defendants' argument that the "bona fide offering" date was prior to the effective date of the registration, when sales were solicited by brokers).

reasonably might be inferred that the[]... purchases occurred less than three years after each of the securities involved 'was bona fide offered to the public.'").[8]  Here, the securities were not even priced until after the market closed on February 2, 2005, or actually sold to any members of the public until February 3, 2005.  (J.A. 1557)  Accordingly, the statute of repose could not begin to run until, at the earliest, February 2, 2005, and the Complaint, filed on February 1, 2008, was thus filed less than three years after the securities were first bona fide offered.

Moreover, although a plain reading of the statute clearly dictates that, at the earliest, the date a security is "bona fide offered to the public" is the date the subject security is ***first*** actually offered for sale to the public, the purpose of the Securities Act would suggest that the repose period does not begin until the securities are ***last*** bona fide offered to the public for sale in an offering (here, February 8, 2005).  (J.A. 1557)  Here, the SPO did not close until February 8, 2005.  Interpreting the repose period as commencing when the shares are first offered in a six day public offering would result

---

[8] The other cases cited by the District Court, *In re Metro. Sec. Litig.*, No. 04-25, 2010 U.S. Dist. LEXIS 10613 (E.D. Wash. Feb. 8, 2010), and *In re Adelphia Commc'n Corp. Sec. and Deriv. Litig.*, No. 03-1529, 2005 U.S. Dist. LEXIS 14444 (S.D.N.Y. July 18, 2005), rely heavily on *Finkel*, but misinterpret the scope of that decision. *Finkel* did not establish the bright-line rule applied by the District Court that the trigger date is always the effective date of the registration statement, but only that it is "ordinarily" that date.  *See Lehman Bros.,* 2012 U.S. Dist. LEXIS 148177, at *25-*26. Moreover, as discussed above, *Stoltz* makes clear that the relevant question is when the stock "really and truly (genuinely) [was] being offered to the public."  355 F.3d at 99.

in the inequitable situation that early purchasers in the SPO have greater rights than later purchasers in the same SPO. In enacting a law to protect purchasers of securities in public offerings, there is no basis to believe Congress intended to discriminate in this manner among investors in the same public offering by effectively reducing the repose period for later purchasers in the same offering. Indeed, if Congress intended this limitation, it would have formulated §13 as "first" or "initially" "bone fide offered to the public," and not simply "bone fide offered." Rather, the more logical statutory interpretation is that Congress intended to protect all such investors equally and that it omitted this limitation based on the understanding that some public offerings of securities would be effectuated over a period of days and that the statute of repose would not then commence until the offering was completed. Thus, here, if the statute of repose began to run on February 8, 2005, when the SPO ended, this action, which was commenced on February 1, 2005, was commenced less than three years of the date the shares were bona fide offered to the public.

Thus, whether the statute of repose begins to run on the date the securities are first price (here, February 2, 2005), first actually offered for sale to the public (here, February 3, 2005), or on the last day of the public offering (here, February 8, 2005), plaintiff Dammeyer's §11 claims are timely as the claims were brought on February 1, 2005, less than three years from when the securities were bona fide offered to the public. Accordingly, the District Court committed reversible error.

**C.    The District Court Erred in Refusing to Consider Plaintiff Dammeyer's Purchase Confirmation Slip Which Demonstrate His Standing under §12(a)(2)**

The District Court dismissed plaintiff Dammeyer's claims under §12(a)(2) of the Securities Act (Count VII) based on its finding that  he did not adequately plead that he purchased his shares directly in the SPO, and thus lacked standing.  (J.A. 1724)  In so holding, the District Court improperly refused to consider plaintiff Dammeyer's purchase confirmation slip, which is expressly referenced in the Complaint, attached to plaintiffs' opposition to the motion to dismiss, and utilized by Defendants in their reply to their motions dismiss. (J.A. 1723-24)

"[C]ourts ***must consider*** the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  Here, the Complaint alleges that Dammeyer "purchased 600 shares of MuniMae stock on February 3, 2005, at $26.32 per share with a ***confirmation slip*** stating 'PROS UNDER SEP COVER.'"[9] (J.A. 89, ¶103; J.A. 1606).

---

[9] The District Court noted that the "parties dispute whether 'PROS UNDER SEP COVER' is an indicator that the shares were pursuant or traceable to the SPO"  (J.A. 1723), but then erroneously failed to draw the reasonable inference in Plaintiffs' favor that the quoted language indicates the shares were purchased directly in the SPO.  *See Kolon Indus*., 637 F.3d at 448 ("'[A]ll reasonable inferences' must be drawn in favor of the complainant.").

The confirmation slip also reveals, in the upper left corner, that plaintiff Dammeyer's MuniMae stock was purchased directly from "RBC," one of the Underwriter Defendants of the SPO. (J.A. 1606) Thus, the Complaint incorporates the confirmation slip by referencing and quoting it, and it should have been considered by the District Court. Nevertheless, despite directly citing to *Tellabs*' mandate that courts consider any "documents incorporated into the complaint by reference," the District Court expressly refused to "***consider*** the parties' respective arguments regarding the confirmation's significance, or lack thereof." (J.A. 1639, 1723). Thus, the District Court committed reversible error by not considering the facts contained in the confirmation slip. *Tellabs*, 551 U.S. at 322.

Moreover, the Complaint alleges that "[Count VII] is asserted by Plaintiff Dammeyer on his own behalf and on behalf of all persons who acquired MuniMae common stock pursuant and/or traceable to MuniMae's SPO." (J.A. 238, ¶374) Faced with this allegation, the District Court noted that because "a plaintiff must purchase directly from an issuer as part of the offering to have standing to sue under Section 12(a)(2), most decisions have concluded that cursory allegations that plaintiffs purchased stock 'pursuant and/or traceable to' the misleading registration are insufficient to state a claim." (J.A. 1719 (citing *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011)). The District Court, however, recognized that if a complaint included supporting details that suggested plaintiffs bought directly in

the challenged offering, these supporting details combined with "pursuant to and/or traceable" allegations could support a plausible claim under §12(a) (2). (J.A. 1720, 1722) ("[Plaintiffs'] Complaint is based upon a 'pursuant and/or traceable' allegation and does not provide supporting details to make a plausible claim that Dammeyer purchased directly in the SPO."); *see also* J.A. 1721 (citing *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 776 (1st Cir. 2011)); *In re Schering-Plough Corp./Enhance Secs. Litig.*, No. 08-cv-397, 2009 U.S. Dist. LEXIS 78852, *20-*21 (D.N.J. Aug. 31, 2009)).

Here, the District Court arrived at its erroneous conclusion by reviewing Plaintiffs' "pursuant to and/or traceable to" allegation in isolation and, thus, failed to consider the Complaint's supporting details that show plaintiff Dammeyer bought directly in the SPO. (J.A. 89, 238, ¶¶103, 374) If the District Court had properly considered the Complaint in its entirety, *i.e.*, the allegations that "Plaintiff Dammeyer. . . acquired MuniMae common stock pursuant and/or traceable to MuniMae's SPO," along with the facts evidenced on the face of the confirmation slip (specifically the sale of these shares by "RBC" to Dammeyer), drawing all inferences in favor of plaintiff and accepting the plausible facts as true under *Twombly* and *Iqbal*, the District Court would have been compelled to infer that Dammeyer purchased his MuniMae stock directly in the SPO and, thus, has standing under §12(a)(2). (J.A. 1606) Accordingly, the District Court committed reversible error.

## D.    Plaintiffs' Alleged a §15 Claim

The District Court held that plaintiff Dammeyer's failure to plead primary violations of §§11 and 12(a)(2) of the Securities Act required dismissal of his control person claims under §15 of the Securities Act with respect to the SPO (Count Eight)." (J.A. 1727-28)  As discussed herein, because Dammeyer adequately alleges violations of §§11 and 12(a)(2) of the Securities Act, his §15 claim should be reinstated.

## E.    The District Court Erred by Disregarding Plaintiffs' Scienter Theory that Defendants Knew and Concealed that Application of FIN 46R would be Cripplingly Expensive

A plaintiff must show that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw *from the facts alleged*."  *Tellabs*, 551 U.S. at 324 (emphasis added).  Under this comparative analysis, courts must first determine whether the facts "permit an inference of scienter, and if so, the persuasiveness of that inference."  *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 183 (4th Cir. 2009).  A complaint should only be dismissed where the court finds the inference that the defendants "acted innocently, or even negligently, more compelling than the inference that they acted with the requisite scienter."  *Pub. Employees' Ret. Ass'n of Colorado v. Deloitte & Touche LLP*, 551 F.3d 305, 313 (4th Cir. 2009); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) (question is whether "a reasonable

- 33 -

person would infer that there was at least a fifty-fifty chance that the individual defendants knew about the alleged fraud"). In short, ties go to plaintiffs.

The proper approach in assessing scienter is a "holistic" one, *Tellabs*, 551 U.S. at 326, with the inquiry focused on "whether *all* of the facts alleged, taken collectively," support a strong inference of scienter, "not whether any individual allegation, scrutinized in isolation, meets that standard." *Id*. at 323 (emphasis in original). While a court may consider non-culpable competing inferences, those competing inferences must be derived solely from the four corners of the complaint. *See id*, 551 U.S. at 324. If the competing inferences are equally plausible, the complaint should be sustained. *Id*. at 331.

Scienter is established by a showing that the material misrepresentation or omission was made intentionally or recklessly. *SEC v. Pirate Investor*, 580 F.3d 233, 241 (4th Cir. 2009). The Exchange Act Plaintiffs' theory of scienter is that, throughout the Class Period, the Muni Defendants knowingly concealed that MuniMae had failed, as required by FIN 46R, to consolidate over 200 VIEs, which consisted of more than 2,000 partnerships in which MuniMae was a general partner and had to redo the accounting for 10 reporting periods, which amounted to analyzing 6,000 financial statements by hand; and that because they did not have an automated process or sufficient staff to accomplish this massive undertaking, the cost to MuniMae would be astronomical. (J.A. 67-69, ¶¶45-55)

The District Court, however, viewed the issue not as whether the Muni Defendants concealed the enormity and cost of the task dictated by an accounting rule they knew they were required to apply – as the Exchange Act Plaintiffs plainly allege – but whether the Muni Defendants struggled with whether the accounting rule applied at all – which cannot be inferred from the facts alleged in the Complaint. (J.A. 1633, 1642, 1668, 1673, 1679-81)  Exchange Act Plaintiffs do not allege that determining whether or not FIN 46R applied to MuniMae's various Funds was complicated.  What they do allege is that by the time of the first restatement announcement in March 2006, it was clear from the Muni Defendants' own analysis that most of the Funds need to be consolidated.  (J.A. 81-82, ¶82) MuniMae's auditor, PwC, also insisted that consolidation was necessary.  (J.A. 84, ¶88)  Moreover, whether or not MuniMae had to consolidate its interest in the Funds, it was required under FIN 46R to make detailed disclosures regarding these entitles.  (J.A. 97, ¶130)  Indeed, the District Court found that the Exchange Act Plaintiffs' allegations "establish that in mid-2006 Defendant Lundquist and other accounting staff had concluded that the LIHTC Funds needed to be consolidated" (J.A. 1673) and that the "main thrust" of the witness allegations included that "Falcone and Lundquist were aware of scope and scale of the restatement project but concealed its cost."  (J.A. 1673-74)

The District Court, however, overlooked the Exchange Act Plaintiffs' fundamental theory that it was the consolidation process itself that was complex, arduous, and costly, made far more difficult because of MuniMae's lack of resources and preparedness – not whether the rule itself was complex or difficult to apply. As the Complaint alleges, "[d]efendants knew or recklessly disregarded the fact that MuniMae had no automated processes or systems in place to accomplish the consolidations and that the task of consolidating these partnerships would be enormously complicated, extremely time-consuming, labor intensive and exorbitantly expensive." (J.A. 52, ¶10) Consolidation required performing "complex accounting procedures and re-measurements *manually*," (J.A. 67-68, ¶49) "the staff was unprepared professionally for the complex nature of the accounting needed," (J.A. 68-69, ¶53) and the process was "further complicated by the dismissal of PwC. (J.A. 68, ¶50; *see also* J.A. 51-52, 65, 77, ¶¶9, 38, 73)

By focusing, based on its own surmise, improperly on the belief that the Muni Defendants did not understand the accounting rule, a fact that is nowhere alleged in the Complaint, the District Court erroneously overlooked the strong facts pleading that the Muni Defendants did know implementing the rule would be extraordinarily expensive because it required implementing new processes from scratch and reviewing thousands of financial statements by hand – and concealed that from investors.

### F.    The Court Relied on Inferences that Had No Factual or Rational Basis in the Complaint

Any "competing inferences" offered for a court's "comparative evaluation" of scienter must be "rationally drawn from the facts alleged" in the complaint. *Tellabs*, 551 U.S. at 314. This, the District Court failed to do.

The District Court concluded that the competing factual theory offered by the Muni Defendants – "that they struggled with a new and difficult accounting rule that ultimately required a restatement that was more expensive and had a greater impact on their bottom line than they had anticipated" – was more compelling than the Exchange Act Plaintiffs' inference that the Muni Defendants intended to conceal both their lack of compliance with FIN 46R and the prohibitive cost of complying drawn from the facts actually alleged in the Complaint. (J.A. 1682; *see also* J.A. 1673)

But the District Court's hypothesis that MuniMae's purported "struggles" with the complexity of the accounting rule is not a proper inference that can be "rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. The Complaint alleges that at least by the time of the first restatement in March 2006, senior executives "had concluded" – yet concealed from investors – that hundreds of VIEs had not been consolidated as required by FIN 46R, and that the task was going to be enormous and the cost prohibitive. (J.A. 65, 68, 81-83, ¶¶38, 51, 82, 85) Given the regular meetings and memos devoted to compliance, auditor disputes, and acknowledgement by defendants that they needed to consolidate hundreds of VIEs (J.A. 80-84, ¶¶80-88), it

- 37 -

is not reasonable to infer that that the Muni Defendants were simply flummoxed by FIN 46R. No facts alleged in the Complaint suggest that the decision to keep VIEs off of MuniMae's balance sheet was a mistake stemming from the difficulty in interpreting a complicated accounting rule. On the contrary, the Exchange Act Plaintiffs allege that the Muni Defendants knowingly postponed compliance because, as ultimately occurred, the task would have consumed cash and prevented it from increasing its dividend. (J.A. 52, 68-69, ¶¶10, 52, 54)[10]

An inference that that the Muni Defendants were struggling with a complex rule is contrary to the Complaint's allegations. (J.A. 67-69, 74, ¶¶45-55, 65) These are fact-bound issues that should await trial. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 558 (6th Cir. 2001) (en banc), *abrogated on other grounds by Tellabs*, 551 U.S. 308 (whether or not defendant's innocent explanation for substantial stock sale is accurate is not an issue that can be decided on the pleadings). As the Court in *Tellabs* stated:

---

[10] The District Court also separately held that even assuming scienter was adequately pled for MuniMae and the other Individual Defendants, it would be inadequate for defendant Lundquist, who was CFO for only a portion of the Class Period. (J.A. 1683) Despite the Exchange Act Plaintiffs' allegations that Lundquist knew, according to two witnesses, that consolidation was required and left without publicly disclosing this fact (J.A. 1673, 1683), the District Court accepted an inference – not grounded in the Complaint – that by the time she left, she "had become more comfortable with the accounting, and did not then think that more restatements would be necessary." (J.A. 1684-85) Lundquist's comfort level with the lack of consolidation is nowhere to be found in the Complaint. As alleged, the Muni Defendants, including Lundquist, knew consolidation was necessary to comply with FIN 46R. (J.A. 83, ¶85).

[A] plaintiff is not forced to plead more than she would be required to prove at trial. A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Stated otherwise, she must demonstrate that it is *more likely* than not that the defendant acted with scienter.

*Id.* at 328-29.

Thus, the District Court effectively abandoned *Tellabs'* "at least as compelling" standard by finding an innocent explanation contrary to the Complaint's allegations, which revives the concern that the scienter pleading requirement violates the Seventh Amendment, which the Supreme Court determined was not implicated by proper application of its *Tellabs'* pleading standard, *see Tellabs*, 551 U.S. at 327-28, because the District Court's approach raises a plaintiff's burden at the pleading stage past the requirement that a plaintiff simply allege facts that give rise to an inference of scienter at least as compelling as any opposing inference one could draw from the facts alleged.

### G. The District Court Credited Reports of Well-Positioned Witness Reports as "Somewhat Supportive," but Erred by Failing to Consider All Scienter Allegations Together

While the District Court correctly noted its obligation to treat the scienter facts holistically (J.A. 1671), it failed to consider "that allegations of scienter that would not independently create a strong inference of scienter might complement each other to create an inference" of sufficient strength to satisfy plaintiffs' pleading burden.

*Matrix*, 576 F.3d at 187-88.  Instead, the District Court considered each of the remaining allegations in isolation.  Thus, the District Court erred in giving lip service to the proper standard and then disregarding it.  *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2001), *vacated and remanded on other grounds sub nom.*, *County of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001) (while court acknowledged its obligation to view the evidence in the light most favorable to the plaintiffs, its decision reveals it erroneously failed to do so).

The witness reports established, as the District Court acknowledged, that by at least mid-2006, the Muni Defendants knew and concealed that the Funds needed to be consolidated pursuant to FIN 46R and that the scope and scale of the restatement project would be massive and expensive. (J.A. 1673)  When these facts are considered together with the other scienter facts, including the firing of MuniMae's uncooperative Big Four auditor and the serial resignations of CFOs, core business inferences, magnitude of the GAAP violations, and defendants' motives, the inferences are far more than merely "supportive" of fraud; they provide a cogent and compelling case for fraud.

## 1.    Witness-Based Allegations about  FIN 46R

The statements from witnesses are corroborative and provide substantial support to infer that defendants knew or, at minimum, recklessly disregarded that MuniMae's non-compliance with FIN 46R would require a massive, astronomically

expensive endeavor that would have a material adverse impact on CAD and the quarterly dividend, and therefore, disclosure was required.  (J.A. 74, ¶65)

Witnesses report that as early as 2004, Muni Defendants regularly met to discuss FIN 46R, during which frustrations were aired about the difficulties associated with the compliance process.  (J.A. 80-83, ¶¶80, 84)  By the time of the March 2006 restatement, defendants were informed by internal auditors that MuniMae was violating FIN 46R by failing to consolidate most of their Funds.  (J.A. 81-83, ¶¶82-85)  During the same time period, their outside auditor, PwC, insisted that the Funds needed to be consolidated.  (J.A. 84, ¶88)

Reflecting what the Muni Defendants knew about the size of the task, CEO Falcone distributed a memo in the Fall of 2006, noting that internal audit staff were required to focus on the restatement with mandatory overtime to get the job done.  (J.A. 81, ¶81)  The Muni Defendants attended meetings in which the financial impact of consolidating these entities was discussed, and were thus starkly aware of the scope and scale of the restatement project.  (J.A. 82-83, ¶84)

These allegations are more than "somewhat supportive" (J.A. 1673) of an inference of fraud.  They support, on a motion to dismiss, an irrebuttable strong inference that well before meaningfully disclosing MuniMae's lack of compliance with FIN 46R in January 2008 (J.A. 170-72, ¶¶237-40) – not January 2007 as the District Court mistakenly states – Muni Defendants knew they had improperly failed

to consolidate more than 200 of its VIEs. The District Court overlooked that the Exchange Act Plaintiffs not only alleged that defendants knowingly concealed that the Funds "needed to be consolidated" (J.A. 1673), but also alleged that they already knew the process would be an arduous and devastatingly costly and which MuniMae lacked the systems or staff to complete. (J.A. 74, ¶65) Moreover, in focusing on MuniMae's January 2007 "disclosure" (*id*.), the District Court failed to recognize that the Muni Defendants' statement that MuniMae would have to consolidate "substantially all" of its Funds concealed the Muni Defendants' knowledge of the enormity of the task, MuniMae's lack of resources to accomplish it, the tremendous cost, and its likely impact for MuniMae's financial results– critical information that the Muni Defendants continued to conceal until a year later. (J.A. 170-72, ¶¶237-40); *see also* 17 C.F.R. §229.303(a)(3)(ii). Failure to make these specific requisite disclosures with full knowledge of the risks alone is sufficiently cogent and compelling for a finding of a strong inference of scienter.

### 2.    Allegations of Firings and Resignations

MuniMae's firing of its auditor supports scienter in combination with the numerous other scienter allegations, and should have been considered by the District Court. *Gelfer v. Pegasyst, Inc*., 96 F. Supp. 2d 10, 17 (D. Mass. 2000) (dispute with auditor "looks less like a good faith disagreement over accounting methods, and more like a deliberate or reckless disregard for the appropriate methods"). By mid-2006,

- 42 -

the Muni Defendants were informed by their internal audit department, as well as their outside auditor, PwC, that most of the Funds needed to be consolidated to comply with FIN 46R. (J.A. 81-84, ¶¶82, 85, 88) The Muni Defendants argued with PwC about this (J.A. 84, ¶88) and ultimately fired PwC as MuniMae's auditor, while falsely denying that there had been any disagreements regarding accounting matters. (J.A. 155-57, ¶223)

In addition, MuniMae had a revolving door of CFOs during the Class Period. Defendant Harrison was Executive Vice President and CFO from the beginning of the Class Period until he resigned on or about December 15, 2005. (J.A. 90, ¶108) Defendant Lundquist succeeded Harrison as CFO, and then she too resigned on July 10, 2007. (J.A. 90, ¶109) Lundquist was followed by defendant Pinckney as CFO. (J.A. 90, ¶110) Pickney, who was also COO during the Class Period, was replaced as CFO on November 8, 2007, by defendant Kay. (J.A. 90, ¶110) This exodus of chief accounting officers further support scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) ("resignations, terminations, and other allegations of corporate reshuffling may in some circumstances be indicative of scienter" where there is "sufficient information to differentiate between a suspicious change in personnel and a benign one.").

### 3. The District Court Improperly Minimized the Centrality of FIN 46R's Accounting Rule to MuniMae in Analyzing Scienter

The District Court minimized the Complaint's allegations that, as a fund manager, the Funds were *the* core of MuniMae's business. *Cf.* J.A. 58, 80, 179 (¶¶24, 78, 247(t)) with J.A. 1679. "[I]n some circumstances it may be reasonable to assume that officers of a company know of facts critical to the company's core operations." *In re Constellation Energy Group, Inc.*, 738 F. Supp. 2d 614, 635 (D. Md. 2010). Thus, in *Makor Issues & Rights Ltd. v. Tellabs, Inc*, 513 F.3d 702, 707-09 (7th Cir. 2008), on remand from the Supreme Court, the Seventh Circuit found that because the alleged statements related to the company's "flagship" product, an inference of innocence was "exceedingly unlikely." As that court held, "no member of the company's senior management who was involved in authorizing or making public statements about the demand for the [core product] knew that they were false is very hard to credit, and no plausible story has yet been told by the defendants that might dispel our incredulity." *Id*. at 709.

The District Court erred by finding that the Muni Defendants were merely having difficulties with implementing a "challenging new accounting rule." (J.A. 1679) There is no basis in the Complaint for inferring that four successive CFOs, the internal audit department or the outside auditor found the rule to be "challenging." *Tellabs*, 551 U.S. at 323 (the court is limited to the four corners of the complaint when

- 44 -

taking into account plausible opposing inferences). Only by ignoring the allegations that the Muni Defendants "had concluded" MuniMae was out of compliance and did not have adequate systems or resources to implement FIN 46R without great expense could the District Court reject the core operations inference and find more compelling an inference that the Muni Defendants were innocently confused about how to apply "a challenging new accounting rule to the funds." (J.A. 1679) Indeed, the Complaint's allegations are not that the Muni Defendants did not understand the accounting rule, but that they knew what was required, yet recklessly disregarded and failed to disclose that MuniMae's accounting treatment of the partnerships in question violated FIN 46R and would have a devastating and material adverse impact on the amount of cash available for distribution as dividends.

Further, the District Court disassociated and, thus, undervalued reasonable allegations from the Complaint regarding defendants' positions and responsibilities, and their direct knowledge that consolidation of the Funds was necessary and astronomically costly. (J.A. 49-50, 56-58, 79-80, 82-83, 175-80, ¶¶4, 18, 22, 24, 77-78, 84, 247) Instead, the District Court stated that "the alleged misstatements and omissions concerned the application of a challenging new accounting rule to the Funds" and that "it does not necessarily follow that the officers knew that their statements were false when made." (J.A. 1679)

- 45 -

The District Court's failure to give proper weight to the core operations allegations, and to improperly consider them in isolation in light of the Complaint's allegations that MuniMae's officers did conclude by at least mid-2006 that the funds needed to be consolidated and were aware of the massive scope and scale of the restatement project, (J.A. 1673), is clear error.

Supporting a finding of a strong inference of scienter is the sheer financial magnitude of the restatement. *In re Atlas Air Worldwide Holdings*, 324 F. Supp. 2d at 488-89, which involved a $363 million dollar earnings restatement, the court held that "[w]hen a company is forced to restate its previously issued financial statements, the mere fact that the company had to make a large correction is some evidence of scienter." MuniMae understated its liabilities by $1.9 ***billion***. (J.A. 192-93, 195, ¶¶258, 263) "[T]he size and nature of the restatement suggests that this was no mere error caused by the improper application of hyper-technical accounting rules." 324 F. Supp. 2d at 489.

The scale, scope and cost of the MuniMae's GAAP violation and its remedy support a strong inference of scienter because "common sense and logic dictate that the greater the magnitude of the restatement or violation of GAAP, the more likely it is that such a restatement or violation was made consciously or recklessly." *In re Royal Ahold*, 351 F. Supp. 2d 334, 376 (D. Md. 2004). Here, the court actually

articulated its disregard of this factor, comparing the Muni Defendants' alleged fraud to a hypothetical *de minimis* environmental violation.  (J.A. 1678)

Given the enormity of the restatement process and attendant cost – $54.1 million in 2007 – it is reasonable to conclude that the Muni Defendants were at least reckless in concealing throughout the Class Period the massive cost involved that would inevitably impact CAD and lead to a reduction in its dividend.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d. Cir. 2000) (finding that the magnitude of company's write-off supports strong inference of recklessness); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 327 (S.D.N.Y. 2001) ("magnitude of the write-off is compelling evidence that defendants' theretofore rosy projections were not entirely forthright").

The District Court's improper consideration of allegations in isolation led it to erroneously conclude that "the nature of the discrepancy in this case does not lead to the inference that the Muni Defendants acted with scienter." (J.A. 1678)  The District Court looked to the fact that "MuniMae held less than one percent interest in the 230 LIHTC Funds that were not initially consolidated, and as a result of the determination that it was the 'primary beneficiary' according to FIN 46R it was required to consolidate all of the LIHTC Funds' assets and liabilities onto its financial statements." (*Id.*)  Thus, according to the court, while the "error had a vast effect on MuniMae's cost of compliance," "in a realistic sense, because MuniMae's ownership

interest in each LIHTC Fund was minor (1% or less), the practical impact of the consolidation on MuniMae's viability (as distinct from the cost to prepare the restated financials) was not significant." (J.A. 1678)  The District Court's conclusion ignored the importance of considering quantitative and qualitative factors together.  *See Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) ("Even where a misstatement or omission may be quantitatively small compared to [ ] firm-wide financial results, its significance to a particularly important segment of a registrant's business tends to show its materiality.").  In the District Court's view, scienter could not be inferred because MuniMae held an "insignificant" interest in the 230 Funds that it had to consolidate.  This ignores allegations establishing the magnitude of the problem for MuniMae; that the Muni Defendants were intensely focused throughout the Class Period in meeting after meeting, including fierce debates with their auditor who they ultimately dismissed, on the implementation of FIN 46R, and the enormous scope, scale and cost of consolidation.  (J.A. 80-83, ¶¶80-85)  As alleged, in 2007 alone, this cost MuniMae more than $54 million.  (J.A. 69, 77, ¶¶55, 71).

"While it is true that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference . . . the absence of a motive allegation is not fatal . . . . [A]llegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint."  *Tellabs*, 551 U.S. at 325.  Adding to the other

scienter allegations, the Exchange Act Plaintiffs allege that the Muni Defendants were motivated to conceal fraud to profit from a securities offering, corporate acquisitions, continued access to financing, and to facilitate insider trading. (J.A. 178-79, ¶¶247(p)-(s)) For example, the Muni Defendants were motivated to conceal the extent of MuniMae's liabilities to artificially inflate the price of MuniMae's common stock during the Class Period and thereby profit from the SPO for gross proceeds of $68.3 million, and numerous private securities offerings. (J.A. 187-89, ¶¶251-52). The Muni Defendants also used MuniMae's artificially inflated stock as currency to fund acquisitions of other companies, including Glaser Financial Group on June 8, 2005, and Renewable Ventures LLC on May 16, 2006. (J.A. 58-59, ¶25) *See, e.g.*, *In re Ibis Tech. Sec. Litig.*, 422 F. Supp. 2d 294, 317 (D. Mass. 2006) (strong scienter inference raised where defendants allegedly delayed impairment charge to complete stock offering); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-5571, 2004 U.S. Dist. LEXIS 7015, at *28-*29 (S.D.N.Y. Apr. 22, 2004) (finding scienter where defendants were motivated to engage in fraud to expand their enterprise); *In re Am. Bank Note Holographics Sec. Litig.*, 93 F. Supp. 2d 424, 444-45 (S.D.N.Y. 2000) (motivation to inflate stock offering price); *In re Centocor, Inc. Sec. Litig. III*, No. 98-260, 1998 U.S. Dist. LEXIS 18909, at *8-*9 (E.D. Pa. Dec. 1, 1998) (allegations that defendants wanted to complete public offering adequately pled scienter); *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1472 (N.D. Ga.

1997) (finding scienter where defendants knowingly made false statements in order to acquire other companies).

Nevertheless, the District Court failed to consider these allegations in the scienter mix. Instead, it held that the SPO and one of the acquisitions relied on by plaintiffs occurred in 2005, prior to when the District Court concluded the Muni Defendants knew that FIN 46R had been applied incorrectly. (J.A. 1680) In fact, the Complaint cogently alleges that by the time of the SPO and the acquisition in question, the Muni Defendants were aware of the risks presented by FIN 46R and the likely impact consolidating over 200 VIEs would have on MuniMae's bottom line. (J.A. 68, 74, ¶¶51-52, 65) Moreover, the third transaction occurred in May 2006, by which time even the court acknowledged that defendants understood the consequences of complying with the massive effort required by FIN 46R. (J.A. 1673).[11]

In addition, during the Class Period, MuniMae's highest-level executives, Joseph, Falcone and Harrison, collectively sold a suspiciously large percentage of their MuniMae holdings. Harrison sold 77.91%, Joseph sold 36.53% and Falcone sold

---

[11] Another motive allegation rejected by the District Court as "not inherently suspicious" (J.A. 1680), without considering it in combination with the other scienter facts is that avoiding consolidation kept millions of dollars of liabilities off of MuniMae's financial statements. If the Muni Defendants had properly consolidated the 230 VIEs as of December 31, 2005, they would have added $1.9 billion in liabilities, almost doubling reported liabilities. This would have caused MuniMae to breach the debt covenants in its loan agreements and would have affected MuniMae's ability to borrow on favorable terms. (J.A. 178-79, 191-92, ¶¶247(s), 254-56)

- 50 -

28.65%.  (J.A. 180-83, ¶248)  As the District Court recognized, allegations of personal financial gain "may weigh heavily in favor of a scienter inference."  J.A. 1674 (citing *Tellabs*, 551 U.S. at 324).  Unusual insider trading activity during the class period may permit an inference of scienter.  *Teachers' Retir. Sys. of LA v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007).  The Court erroneously concluded, however, that the insider trading was neither unusual nor suspicious.  (J.A. 1674)

The District Court held that the fact that only three of the six, albeit those at the top of the pyramid, Individual Defendants sold shares during the Class Period, was "supportive of the defense position."  *Id.*[12]  But trading by six insiders, including three Individual Defendants, is far more suspicious than trading by just one defendant.  *See Freedman v. Value Health, Inc.*, 958 F. Supp. 745, 755 (D. Conn. 1997) (holding that sales by only three of nine named defendants was sufficient to plead scienter).

In addition, the District Court failed to find the timing of sales suspicious, noting that these defendants sold most of their stock "well before the financial restatements and well before mid-2006, when according to CW2, certain officers had knowledge that all of the LIHTC Funds would have to be consolidated."  (J.A. 1675)  This overlooks the allegations that from the time FIN 46R was in effect *in 2004*, the

---

[12] The District Court relied on *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995), where only one of four individual defendants sold shares.

Individual Defendants at MuniMae were well aware of the risks posed by implementation of the rule.

Moreover, Falcone's and Joseph's largest trades during the Class Period occurred in 2006, when they were, according to the well-pled allegation of the Complaint, aware of MuniMae's GAAP violations. (J.A. 83-84, 180-83, ¶¶86, 88, 248) The District Court notes that the Exchange Act Plaintiffs did raise "some inference of fraudulent intent" with respect to Joseph, who given his involvement with accounting issues "was aware of the discussions about FIN 46R that had been going on 'for months' prior to the March 2006 announcement of the First Restatement." (J.A. 1677) However, the District Court found the inference of fraud – improperly considered in isolation – "hardly significant" because these sales began at regular intervals fairly early in 2005 and Joseph sold *only* 36.53% of his holdings. (J.A. 1677) This finding is simply not supportable by the law or facts. *See, e.g., Batwin v. Occam Networks, Inc.*, No. 07-2750, 2008 U.S. Dist. LEXIS 52365, at *41-*48 (C.D. Cal. July 1, 2008) (sale of 7% suspicious); *In re Secure Computing Corp.*, 184 F. Supp. 2d 980, 989 (N.D. Cal. 2001) (sales of 6.3%, 7% and 13.6% suspicious); *In re PETsMART, Inc. Sec. Litig*., 61 F. Supp. 2d 982, 1000 (D. Ariz. 1999) ("If we assume he bought and sold no other shares during the class period, the sales would represent more than 25% of Parker's holdings, an amount sufficient to raise eyebrows").

Absent a scintilla of opposing facts that could be rationally drawn from the four corners of the Complaint, by early 2005, viewed collectively – as they must – the Complaint alleges facts giving rise to a strong inference that the Muni Defendants understood the nature and risks of the compliance with FIN 46R, the likely magnitude of the cost and impact on MuniMae of compliance, and its ability to pay dividends. (J.A. 74, ¶65)

### H. MuniMae's Belated and Vague Disclosures that It Was Required to Consolidate Its Funds Did Not Meaningfully Alert Investors of the Company's Risks

According to the District Court, citing *Matrix*, 576 F.3d at 187-89, the Muni Defendants' disclosures, beginning in January 2007, tended "to negate an inference that MuniMae was intentionally or recklessly misleading investors," (J.A. 1681), because they meaningfully alert[ed] investors to the risk that financial information is not accurate . . . suggest[ing] that the individuals responsible for the disclosure did not knowingly (or perhaps not even recklessly) misstate the underlying financial information." (J.A. 1681)  This finding is absurd.  "Meaningfulness" of warnings must be analyzed in context to determine whether defendants disclosed what were "the principal or important risks." *Asher v. Baxter*, 377 F.3d 727, 734 (7th Cir. 2004). Thus, courts must consider whether cautions were given "with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged statements." *Lapin v. Goldman Sachs Group, Inc.*, 506 F.

Supp. 2d 221, 238 (S.D.N.Y. 2006); *DeMarco v. Lehman Bros. Inc.*, 309 F. Supp. 2d 631, 634 (S.D.N.Y. 2004) ("the very fact that, notwithstanding the skeptical language, the reports gave [the company] the highest possible 'buy' rating is tantamount to a statement that the reader of the reports should discount the skeptical language.")

The Muni Defendants' vague, belated boilerplate disclosures do not support a competing nonculpable inference.  On the contrary, the Muni Defendants' initial "disclosures" touted MuniMae's dividend while providing little more information than the fact that consolidation of previously unconsolidated entities was necessary.[13] Their later "disclosures" continued to mislead investors, falsely reassuring them that, although the restatement was ongoing and potentially costly, it would not adversely affect (MuniMae's only metric) CAD or quarterly distributions.  (J.A. 137, 154-55, ¶¶199, 221)[14]

---

[13] In January 2007, at least six months after defendants are alleged have become aware of the massive scope, scale and cost involved in complying with FIN 46R (J.A. 81-83, ¶¶82-85), defendants for the first time mentioned publicly that they would be required to consolidate "substantially all of the low income housing tax credit equity funds it has interests in."  (1/31/07 Press Release)  This cryptic statement was subsumed in a press release focused on and, indeed entitled, "MuniMae Announces 40th Consecutive Increase in Quarterly Distribution."

[14] May and July 2007 statements noted that MuniMae "had determined that we are required to consolidate certain entities not previously consolidated." (J.A. 159-62, ¶¶227-29)  There was no meaningful indication in either statement of the enormity of the task at hand or the devastating impact that defendants knew consolidation would have on CAD.  (J.A. 74, ¶65)  In August 2007, MuniMae claimed they were "devoting as many resources as possible" to completing their restatement efforts (J.A. 164, ¶231)

The Muni Defendants' announcements followed a predictable theme, downplaying the massive impact of the restatement and reassuring investors that management had it under control and the dividend was safe. Despite nebulous remarks about "very significant" costs made in November 2007 – at least a year-and-a-half after the problems with the restatement became known to the Muni Defendants – investors were not made aware of the true magnitude of the situation. None of these announcements revealed that the Muni Defendants lacked adequate systems to consolidate more than 230 VIEs without enormous cost or an impact on CAD. (J.A. 167-69, ¶235)

The District Court's out-of-context focus on these disclosures failed to consider the Muni Defendants' concealment of the true magnitude and cost of consolidation while touting dividend increases undermined any conceivable warning embedded in the announcements. Thus, its conclusion that "the fact that MuniMae repeatedly alerted financial investors that it needed to restate its financials, that its internal accounting controls were deficient, that it had hired outside consultants, and that the costs of the restatements were very significant and beyond what had been

---

and in November, defendants noted "the magnitude and the cost will be very significant." (J.A. 167-69, ¶235) This information was provided not to warn investors of financial risks but "[t]o give [them] a sense of our dedication to the restatement task." (J.A. 164, ¶231) Indeed, the Muni Defendants reassured investors that management planned to recommend to the Board that MuniMae maintain its policy of increasing dividends each quarter. (J.A. 165-66, ¶¶232, 234)

contemplated, tends to negate the inference of scienter," (J.A. 1681), was erroneous. *See, e.g., In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.").

Compounding its errors, the court ignored the facts alleged by the Exchange Act Plaintiffs that the Muni Defendants knew they were required to comply with FIN 46R by as late as mid-2006 and were aware of their deficient accounting controls and inadequate systems to achieve compliance earlier than that. (J.A. 80-83, ¶¶80-84) While privately expressing concerns about the scale and scope of the restatement project (J.A. 83, ¶85), the Muni Defendants did not even hint publicly of any problems until January 2007, at which time it buried its reference to consolidation in a press release touting another dividend increase. Subsequent announcements in 2007 emphasized continued increases in the quarterly dividend. Far from negating an inference of scienter, these misleading disclosures support it. *See Litwin*, 634 F.3d at 718-19 (finding that the defendant company was required to disclose the manner in which failure of a key investment, the downward trend in the real estate market, and the loss of an important contract might reasonable affect the defendant company's future revenues).

## I.    Plaintiffs Alleged a §20(a) Claim

The District Court ruled that, because the Exchange Act Plaintiffs did not plead a §10(b) claim, their §20(a) control claim also failed.  (J.A. 1690)  Because a §10(b) claim was alleged, the §20(a) claim should be reinstated.

## VII.    CONCLUSION

For the foregoing reasons, the judgment of dismissal should be reversed.


Respectfully submitted,


*/s/ Charles J. Piven*
Charles J. Piven
Yelena Trepetin
**BROWER PIVEN**
 A Professional Corporation
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

David A.P. Brower
**BROWER PIVEN**
 A Professional Corporation
475 Park Avenue South, 33rd Floor
New York, NY 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
brower@browerpiven.com

Sherrie R. Savett
Barbara A. Podell
Eric Lechtzin
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
bpodell@bm.net

*Counsel for Plaintiffs-Appellants*

*Of Counsel:*

Kim E. Miller
**KAHN SWICK & FOTI, LLC**
500 5th Ave., Suite 1810
New York NY 10110
Toll Free: (866) 467-1400
Phone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

Susan K. Alexander
Andrew S. Love
**ROBBINS GELLER RUDMAN &
DOWD LLP**
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
salexander@rgrdlaw.com
alove@rgrdlaw.com

## **REQUEST FOR ORAL ARGUMENT**

Plaintiffs-Appellants respectfully request oral argument. Due to the complexities and amount of issues involved in this matter, Plaintiffs-Appellants believe that the Court would be aided by oral argument.

Respectfully submitted,


/s/ Charles Piven
Charles J. Piven
Yelena Trepetin
**BROWER PIVEN**
 A Professional Corporation
1925 Old Valley Road
Stevenson, MD 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

*Counsel for Plaintiffs-Appellants*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _____      Caption: _____

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ ]     this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ]     this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

## CERTIFICATE OF SERVICE

I certify that on April 30, 2013, I caused eight paper copies of the foregoing

Brief of Appellants to be hand-delivered to the Clerk of this Court at the following

address:

Patricia S. Connor, Clerk
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517

I further certify that on April 29, 2013, the foregoing Brief of Appellants

was served on all parties or their counsel of record through the CM/ECF system.


*/s/ Charles J. Piven*
Charles J. Piven